# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

### CIVIL NO. 1:18-CV-321

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| APPROXIMATELY $7,500.00 IN U.S. CURRENCY SEIZED FROM JAMES HUNTER ROGERS, | ) ) ) |
| | ) |
| Defendant. | ) |

## **VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

The United States of America hereby files this Complaint and alleges upon information and belief, and in accordance with Supplemental Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, as follows:

## **NATURE OF ACTION**

1. This is a civil action *in rem* for forfeiture of approximately $7,500 in United States Currency (the "Defendant Currency") seized from James Hunter Rogers on or about June 24, 2018, during a traffic stop on US 23 in Jackson County, North Carolina, within the Western District of North Carolina.

1

## ADMINISTRATIVE FORFEITURE

2. The Drug Enforcement Administration ("DEA") initiated an administrative forfeiture action against the Defendant Currency. Mr. Rogers filed a claim for the Defendant Currency. The United States now files this Complaint in response to that claim.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4. This Court has *in rem* jurisdiction over the Defendant Currency and venue is proper pursuant to:

   a. 28 U.S.C. § 1355(b)(1)(A), because acts or omissions giving rise to the forfeiture occurred in the Western District of North Carolina; and

   b. 28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Western District of North Carolina pursuant to 28 U.S.C. § 1395.

5. The Defendant Currency has been seized, is now within, and during the pendency of this action will remain within the Western District of North Carolina.

## THE DEFENDANT *IN REM*

6. The Defendant Currency consists of approximately $7,500 in United States Currency seized from James Hunter Rogers on or about June 24, 2018.

7. DEA took custody of the Defendant Currency, and it remains in the custody of the United States.

8. As set forth in Supplemental Rule G(3)(b)(i), the Clerk must issue a Warrant to arrest the Defendant Currency because it is already in the Government's possession, custody, or control.

## BASIS FOR FORFEITURE

9. The Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) because it constitutes: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.

## FACTS

10. The facts and circumstances supporting the forfeiture of the Defendant Currency have been provided by DEA Task Force Officer Dave Flanagan, who verifies the following facts:

11. On Sunday, June 24, 2018, North Carolina State Highway Patrol Trooper Darrell J. Brooks stopped his patrol car in between the northbound and southbound lanes of US 23 near mile marker 91 in Jackson County, North Carolina to perform stationary radar. The front of Trooper Brooks' patrol car faced the oncoming northbound traffic on US 23.

12. While running his stationary radar, Trooper Brooks clocked a blue BMW 335i in the left northbound lane of US 23, traveling at 76 mph in a 55 mph zone.

13. Trooper Brooks activated his blue lights and siren, and proceeded to stop the BMW.

14. The BMW stopped on the right shoulder of US 23 northbound, just east of Crawford Cemetery Road. Trooper Brooks exited his vehicle and approached the passenger side of the BMW.

15. Trooper Brooks made contact with the driver, later identified as James Hunter Rogers, who was the only occupant of the vehicle. The BMW is registered to Valerie Capps Rogers, who shares the same address as Mr. Rogers.

16. Trooper Brooks instantly smelled the odor of marijuana emanating from the inside of the vehicle.

17. Trooper Brooks asked Mr. Rogers for his driver's license, but Mr. Rogers instead handed the officer a North Carolina ID card. Mr. Rogers did not have a driver's license because his driving privileges had been restricted due to a DWI offense.

18. Trooper Brooks noticed that Mr. Rogers' eyes were red and glassy. Trooper Brooks asked Mr. Rogers if he had been drinking or smoking, to which Mr. Rogers denied.

19. Suspecting that there was marijuana in the vehicle, Trooper Brooks asked Mr. Rogers where his marijuana was, and Mr. Rogers retrieved a clear plastic baggie containing approximately 3.4 grams of marijuana from the driver's side door pocket and handed it to the officer.

20. Below is a photograph of the marijuana found in Mr. Rogers' vehicle:



21. Trooper Brooks asked Mr. Rogers if there was anything else in the vehicle that Trooper Brooks should know about.

22. Mr. Rogers advised that the only other item was rolling paper that he had in the front passenger seat.

23. Due to Mr. Rogers' driving restrictions, Trooper Brooks asked him if he had been working or attending a school function.

24. Mr. Rogers advised that he was on his way back from performing community service at the Goodwill in Sylva, North Carolina.

25. Trooper Brooks returned to his patrol car and conducted a criminal history search on Mr. Rogers, which reflected a history of various drug-related charges, including possession with intent to sell marijuana.

26. Trooper Brooks instructed Mr. Rogers to exit the vehicle and sit on the guardrail. Trooper Brooks then conducted a probable cause search of the vehicle.

27. Inside the driver's side door pocket where the marijuana had been located, Trooper Brooks found a black marijuana grinder containing trace amounts of marijuana.

28. Trooper Brooks questioned Mr. Rogers about the grinder, and Mr. Rogers indicated that he forgot that the grinder was in the vehicle.

6

29. Trooper Brooks also located a flare gun under the driver's seat that closely resembled a handgun.

30. When asked about the flare gun, Mr. Rogers indicated that he used it for scaring off bears while camping.

31. Trooper Brooks attempted to open the glove compartment, but it was locked. Trooper Brooks found this unusual, so he asked Mr. Rogers what was in the glove compartment.

32. Mr. Rogers advised that there was $7,500 in cash in the glove compartment.

33. Trooper Brooks found it odd that Mr. Rogers would be transporting such a large amount of cash in his vehicle, so he asked Mr. Rogers to unlock the glove compartment.

34. Mr. Rogers used his keys and unlocked the glove compartment for Trooper Brooks.

35. Trooper Brooks located $7,500 in cash inside of the glove compartment, organized in three rubber-banded stacks: a large stack totaling $4,000; a medium sized stack totaling $2,500, and a small stack totaling $1,000. The three rubber-banded stacks consisted mostly of $20 bills.

36.     Below is a photograph of the $7,500 in U.S. Currency found inside of Mr. Rogers' vehicle:



37.     Trooper Brooks asked Mr. Rogers why he had that much money in the vehicle, and Mr. Rogers explained that he likes to buy and sell cars to drag race.

38.     Trooper Brooks again asked Mr. Rogers where he was traveling from, and questioned Mr. Rogers whether the Goodwill in Sylva would confirm that he worked there today if Trooper Brooks called the store.

39.     Mr. Rogers responded, "yes sir," and reiterated that he had been at the Goodwill performing his community service.

40.     Trooper Brooks returned to his patrol car and telephoned the Goodwill in Sylva.

8

41. Trooper Brooks spoke to a female manager of the store, who advised that the only person who performed community service at the store that day was an individual with the last name of "Hernandez," who did not match the description of Mr. Rogers.

42. The female manager also informed Trooper Brooks that Mr. Rogers was not on the community service list for the Goodwill.

43. Following this phone call, Trooper Brooks again questioned Mr. Rogers about working at Goodwill that day, and Mr. Rogers maintained that he had been there.

44. After further questioning by Trooper Brooks, Mr. Rogers finally admitted that he was not at Goodwill, but instead was at Western Carolina University "hanging out with his friends."

45. Trooper Brooks cited Mr. Rogers for speeding, driving while his license was revoked, possession of marijuana, and possession of marijuana paraphernalia.

46. Trooper Brooks conferred with a DEA Task Force Officer by telephone, who advised Trooper Brooks to seize the $7,500 in U.S. Currency.

47. Trooper Brooks seized the $7,500 in U.S. currency and sealed it into an evidence bag.

48. On Monday, June 25, 2018, a properly trained narcotics detection dog positively alerted to the presence of the odor of drugs on the Defendant Currency.

49. Individuals who handle controlled substances often get traces of the substances on their hands and clothing. These trace amounts of a controlled substance can easily be spread to other items the individual touches such as currency. A positive alert to U.S. currency by a properly trained dog indicates that the currency had either been handled by someone who had trace amounts of a controlled substance on their hands, or the currency had recently been in close proximity to a controlled substance.

50. On or about October 28, 2017, and again on March 6, 2018, Mr. Rogers admitted to law enforcement that he was involved in selling marijuana.

51. Mr. Rogers has previously sold or attempted to sell marijuana to individuals near or on the campus of Western Carolina University.

52. Based upon the totality of the circumstances in this case, a reasonable belief exists that the Defendant Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes: (1) money furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money used or intended to be used to facilitate a violation of the Controlled Substances Act.

53. The following persons may have or claim an interest in the Defendant Currency:

James Hunter Rogers
139 Atwood Drive
Hendersonville, NC 28792

Robert E. Campbell, PLLC
P.O. Box 32
Taylorsville, NC 28681
Attorney for James Hunter Rogers

Valerie Capps Rogers
139 Atwood Drive
Hendersonville, NC 28792

**PRAYER FOR RELIEF**

54. All right, title, and interest in the Defendant Currency vested in the United States at the time of the commission of the unlawful act giving rise to forfeiture, 21 U.S.C. § 881(h), and has become and is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6). Accordingly, the United States respectfully prays the Court that:

   a. a warrant for the arrest of the Defendant Currency be issued;

   b. due notice be given to all parties to appear and show cause why the forfeiture should not be decreed;

c. judgment be entered declaring the defendant to be condemned and forfeited to the United States of America for disposition according to law; and

d. the United States be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action, including but not limited to the expenses of maintenance and protection of the Defendant Currency as required by 28 U.S.C. § 1921.

Respectfully submitted this 6th day of November, 2018.

R. ANDREW MURRAY
UNITED STATES ATTORNEY

**s/Jonathan D. Letzring**
JONATHAN D. LETZRING
Assistant United States Attorney
Georgia Bar No. 141651
Room 233, U.S. Courthouse
100 Otis Street
Asheville, North Carolina 28801
Tel: (828) 271-4661
Fax: (828) 271-4327
Email: Jonathan.letzring@usdoj.gov

## VERIFICATION

I, David Flanagan, am a Task Force Officer with the Drug Enforcement Administration. I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and the matters contained in the Verified Complaint are true and correct. The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case.

Pursuant to 28 U.S.C § 1746, I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this _____5th_____ day of November, 2018.

David Flanagan
DEA Task Force Officer